UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.<br><br>    Plaintiff,<br><br>  v.<br><br> R.J. MCDONALD, INC.<br><br>    Defendant. | Case No. 1:17-cv-10576-DPW<br><br>Consent Decree |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on April 4, 2017, against R.J. McDonald, Inc. ("R.J. McDonald" or "Defendant"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act"), and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs;

WHEREAS, CLF is a regional, nonprofit environmental organization;

WHEREAS, R.J. McDonald owns and operates a construction sand and gravel facility located at 2076 Barre Rd., Gilbertville, MA 01031 (the "Facility");

WHEREAS, CLF alleged that the Facility discharged stormwater and process wastewater associated with its industrial activity without a Clean Water Act discharge permit to waters of the United States;

WHEREAS, CLF alleged in its complaint (the "Complaint") and in a letter (the "Notice Letter") dated January 26, 2017, sent to R.J. McDonald, that R.J. McDonald violated sections 301(a) and 402(p)(2)(B) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342(p)(2)(B);

WHEREAS, R.J. McDonald has agreed to engage a qualified engineering consultant to undertake the preparations necessary to apply for a stormwater discharge permit for the Facility; and

WHEREAS, CLF and R.J. McDonald (collectively, the "Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by R.J. McDonald of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

1

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202, and 33 U.S.C. § 1365(a).

2.    Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(l), because the alleged events giving rise to this action occurred at the Facility, located at 2076 Barre Rd. in Gilbertville, Massachusetts, which is located within this judicial district.

## II.    COMPLIANCE PROGRAM

3.    Defendant shall not cause or allow process wastewater to discharge from the Facility, unless consistent with state and federal statutory and regulatory requirements and discharge permits.

4.    Defendant shall obtain and maintain coverage under the United States Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("MSGP") and shall comply with the MSGP at the Facility. The MSGP, as it may be updated from time to time, is incorporated into this Consent Decree by reference.

5.    Within thirty (30) days after the date on which this Consent Decree is entered by the Court (the "Effective Date"), Defendant shall develop a stormwater pollution prevention plan ("SWPPP") in accordance with Parts 5 and 8.E of the MSGP.  Defendant shall implement the provisions of its SWPP at the Facility.  Development of the SWPPP shall include, at minimum, the following steps:

a) formation of a pollution prevention team of qualified personnel who will be responsible for ensuring compliance with the MSGP;

b) identification of potential stormwater pollution sources at the Facility, and selection and installation of appropriate control measures that minimize the discharge of pollutants during storm events for each of these sources; and

c) development of procedures for conducting required inspection and monitoring activities, as well as regular maintenance of control measures, at the Facility.

6.    Defendant has retained a qualified engineering consultant to develop its SWPPP. Defendant shall incorporate the consultant's recommendations in its SWPPP.

7.    Defendant shall provide a copy of its SWPPP to CLF for review and comment no later than August 18, 2017.

8.    Wherever feasible, Defendant will design, install, and implement control

2

measures that employ a low-impact ("LID") approach.  LID is a natural-resource-based alternative approach to site design that incorporates a variety of structural and non-structural techniques, such as vegetated areas the collect, treat, and infiltrate stormwater and shallow drainage channels that slow runoff and filter it.

## III.    MONITORING PROGRAM

9.    Defendant shall comply with all inspection, monitoring, and reporting requirements of the MSGP.

10.    Defendant shall monitor and sample its stormwater runoff pursuant to the MSGP for pollutants identified in the MSGP for Sector J (i.e., Total Suspended Solids and Nitrate plus Nitrate Nitrogen) commencing on the Effective Date.  This monitoring must be performed pursuant to the requirements of the MSGP and include, at a minimum, the stormwater collection areas where runoff is generated, received, stored, treated, or disposed and that are exposed to either precipitation or stormwater runoff.  Once Defendant has obtained coverage under the MSGP in the future as set forth in Paragraph 4 of this Decree, Defendant shall commence submitting quarterly tests to EPA.

11.    Defendant shall comply with all inspection and monitoring requirements of the MSGP including, but not limited to, those of Part 3 including, but not limited to, the in-house inspection of control structures and storage areas after rain events.

12.    During the first year after the Effective Date of this Decree, Defendant shall implement and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sector J (i.e., Total Suspended Solids and Nitrate plus Nitrite Nitrogen). If, after the end of twelve (12) months from the Effective Date of this Decree, Defendant's quarterly monitoring results for any parameter exceed MSGP Part 8.J benchmark levels, Defendant agrees to pay stipulated additional environmental benefit payments as set forth in Paragraph 17 of this Decree; unless, however, the benchmark exceedance does not trigger a corrective action because the exceedance is solely attributable to natural background sources or no further pollutant reductions are technically available and economically practicable and achievable in light of best industry practice (see MSGP Part 6.2.1.2) in which case no environmental benefit payments are due and owing. Such stipulated additional environmental benefit payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (i.e., an exceedance of the TSS monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional environmental benefit payment, rather than three).

13.    During the life of the Decree, CLF, through representatives, may conduct one (1) site inspection at the Facility every year. The site inspection shall occur during normal business hours and upon 24 hours prior notice including notice to Defendant. During the site inspection, CLF representatives may collect water and soil samples, take photos at the Facility, and monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Defendant.

3

14.     During the life of the Decree, Defendant shall copy CLF on all documents related to stormwater quality or Clean Water Act compliance regarding the Facility submitted to the EPA, MA DEP, or any local government.   Such documents shall be provided to CLF within ten days of being sent to the agencies and/or local government.

## IV.   ENVIRONMENTAL BENEFIT PAYMENT

15.     Within forty-five (45) days of the Effective Date, R.J. McDonald shall make an environmental benefit payment totaling twenty two thousand dollars ($22,000) to the Connecticut River Conservancy for the environmental protection and restoration of, or other environmental benefit to, the Chicopee River Watershed. Defendant shall notify CLF in writing when the environmental benefit payment is made and provide a copy of the check.  Such payment, together with a cover letter reproducing this paragraph, shall be sent to the following address:

> Connecticut River Conservancy
> Attn: Andrew Fisk, Executive Director
> 15 Bank Row
> Greenfield MA 013301

16.     For each missed deadline included in this Decree, excluding missed payment deadlines (discussed in Paragraph 20 below), Defendant shall make an additional environmental benefit payment to Connecticut River Conservancy in the amount of five hundred dollars ($500.00) for the environmental protection and restoration of, or other environmental benefit to, the Chicopee River Watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 40, below, Defendant shall not be required to make such additional environmental benefit payment for missed deadlines arising from a Force Majeure event.

17.     For each exceedance of an MSGP benchmark as described in Paragraph 12 of the Decree, above, Defendant will make an additional environmental benefit payment to Connecticut River Conservancy in the amount of five hundred dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Chicopee River Watershed. Payment of each such additional amount shall be due fourteen (14) days following each exceedance.

18.     None of the environmental benefit payments shall be disbursed to CLF.

## V.   LIQUIDATED ATTORNEY FEES AND COSTS

19.     Within forty-five (45) days of the Effective Date, Defendant shall pay to CLF a total sum of twenty eight thousand ($28,000.00) as full and complete satisfaction of CLF's claim for attorney fees and costs incurred to date in this matter and for reasonable anticipated fees and costs to be incurred in compliance monitoring and case management over the term of the Decree.

20.     In the event that any payment owed by Defendant under the Decree is not made

4

by fourteen (14) days after the due date,, Defendant shall be deemed in default of its obligations under this Decree. In addition to a continued requirement to make said payment, Defendant shall pay to CLF liquidated attorney fees of one hundred dollars ($100) for every day that a payment is late.

## VI.    EFFECT OF DECREE

21.    CLF covenants not to sue, releases and discharges R.J. McDonald (and its subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letter to Defendant dated January 26, 2017; and (iv) for past violations alleged in any CLF correspondence to R.J. McDonald dated prior to the date the Court enters this Decree concerning R.J. McDonald's Facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

22.    Defendant R.J. McDonald covenants not to sue, releases and discharges CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) releases and discharges CLF, its representatives, assigns, agents, employees, officers, and attorneys, including those who have held positions in the past from any and all claims, liability, demands, penalties, costs, and causes of action of every nature arising prior to the date on which the Court enters this Decree, which concern or are connected with CLF's investigation of and actions regarding R.J. McDonald.

23.    Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendant shall constitute or be construed as an admission or acknowledgment by Defendant of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Defendant retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendant of any liability, or an admission of violation of any law, by Defendant or by its officers, directors, employees, agents, successors, or assigns.

24.    CLF does not, by consent to the Decree, warrant or aver in any manner that Defendant's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

## VII.  REVIEW AND TERM OF DECREE

25.     The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

26.     Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (i) five years have passed from the Effective Date; and (ii) completion of all payment obligations set forth in this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII.  MODIFICATION AND ENFORCEMENT OF DECREE

27.     This Decree may be modified only upon written consent of the Parties and the approval of the Court.

28.     This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree. If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of Massachusetts concerning their respective rights and obligations under this Decree.

## IX.  MISCELLANEOUS PROVISIONS

29.     This Decree shall remain in effect if Defendant relocates the Facility to a different location.

30.     Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if R.J. McDonald ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

31.     All payments pursuant to this Decree may be made in form of a certified bank check.

32.     Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

33.     Notices. Any notice, demand, copies of documents and other communications

6

required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (e.g., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Zachary K. Griefen, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
zgriefen@clf.org

Notices for Defendant shall be sent to:

R.J. McDonald, Inc.
c/o Richard J. McDonald, Jr., Vice President
P.O. Box 638
Barre, MA 01005
bonny@rjmenergy.com

With a copy to:

Adam J. Brodsky, Esq.
Drohan, Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, MA 02043
(781) 749-7200
abrodsky@dtm-law.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

34.     Authorization. Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

35.     Successors and Assigns. This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

36.     Interpretation. The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

37.     Headings. The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

38.     Counterparts. Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

39.     Severability. In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

40.     Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 14 and 18 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 33 above, within three (3) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the

8

Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

**Conservation Law Foundation, Inc.**

By: _____     Date: _____

Christopher M. Kilian, Vice President and Director
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
ckilian@clf.org


**R.J. McDonald, Inc.**

By: _____     Date: _____

Richard J. McDonald, Jr., Vice President
R.J. McDonald, Inc.
57 Hubbardston Road
Barre, MA 01005

ENTERED & DATED this _8th_ day of _August_, 2017

_____
Honorable   Douglas P. Woodlock
United States District Judge

**Conservation Law Foundation, Inc.**

By: _____    Date: _____

Christopher M. Kilian, Vice President and Director
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
ckilian@clf.org


**R.J. McDonald, Inc.**

By: _Richard J McDonald Jr_____    Date: _6/12/17_____

Richard J. McDonald, Jr., Vice President
R.J. McDonald, Inc.
57 Hubbardston Road
Barre, MA 01005

ENTERED & DATED this _~~7th~~ 8th_ day of _August_, 2017

_Douglas P. Woodlock_
Honorable  Douglas P. Woodlock
United States District Judge

10